United States District Court
Southern District of Texas

**ENTERED**

May 09, 2024

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JOE HERNANDEZ, *et al.*, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-cv-02748 |
| | § | |
| ROHM AND HAAS CHEMICALS LLC, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion to Remand filed by Joe Hernandez and Danny Williams (collectively, "Plaintiffs"). *See* Dkt. 10. For the reasons explained below, I recommend that the Motion to Remand be **DENIED**.

## BACKGROUND

Plaintiffs allege that, on July 21, 2021, they were exposed to hazardous chemicals released from a tanker trailer at the Rohm and Haas Chemical LLC ("Rohm and Haas") facility in Bayport, Texas.

Plaintiffs, both Texas residents, filed suit in June 2023 in the 113th Judicial District Court of Harris County, Texas. In that case, Plaintiffs brought negligence and gross negligence claims against Rohm and Haas and three individuals—Edward Heins Jr. ("Heins"), Alan Haggadone ("Haggadone"), and Ray Russell ("Russell") (collectively, "the Individual Defendants"). Rohm and Haas is considered a Delaware citizen because its sole member, Rohm and Haas Equity Corporation, is incorporated in Delaware, with its principal place of business also in Delaware.[1] The Individual Defendants are all Texas citizens.

---

[1] The citizenship of a limited liability entity is determined by the citizenship of its members. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). When members of a limited liability entity are themselves entities or associations, citizenship must be traced through however many layers of members there are until

Rohm and Hass removed the case to federal court, arguing diversity jurisdiction exists because Plaintiffs improperly joined the Individual Defendants. Plaintiffs strongly disagree and have moved to remand the case to state court.

## LEGAL STANDARD

A party may remove any civil action from state court to a federal district court that would have original jurisdiction. *See* 28 U.S.C. § 1441(a). A district court may exercise jurisdiction over two types of cases: those that present a federal question, and those in which there is diversity of citizenship. *See* 28 U.S.C. §§ 1331–1332. Under diversity jurisdiction, district courts have original jurisdiction of all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Removal is only proper in such a case, however, if there is "complete diversity." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey*, 542 F.3d at 1079 (quotation omitted).

"The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Lab'ys*, 408 F.3d 177, 183 (5th Cir. 2005). "If a party has been improperly joined, . . . the lack of complete diversity will not prevent a defendant from removing a case to federal court." *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018). When a "plaintiff improperly joins a non-diverse defendant, . . . the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg*, 819 F.3d at 136; *see also Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) ("If a party is improperly joined, a court may

---

arriving at the entity that is not a limited liability entity and identifying its citizenship. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397–98 (5th Cir. 2009). A corporation is considered a citizen of both its state of incorporation and the state in which it maintains its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

disregard the party's citizenship for purposes of determining subject matter jurisdiction.").

The Fifth Circuit has recognized two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Rohm and Haas does not assert that Plaintiffs have committed actual fraud in the pleading of jurisdictional facts, so the only issue is whether Plaintiffs can establish a cause of action against the Individual Defendants.

To determine whether Plaintiffs have a reasonable basis of recovery against the Individual Defendants, there are two paths I can follow. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). On one hand, I "may conduct a 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant[s]." *Id*. There are some cases, however, "in which a plaintiff has stated a claim but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id*. In those cases, "the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry," considering summary judgment-type evidence such as affidavits and deposition testimony. *Id*. "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant[s]." *Id*. at 573–74. "For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id*. at 574 n.12.

The removing party bears a "heavy burden" of proving that joinder was improper. *Id*. at 576. Because federal courts are courts of limited jurisdiction, removal statutes are "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident &*

*Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Accordingly, in deciding whether a party has been improperly joined, I must "resolve all contested factual issues and ambiguities of state law in favor of [Plaintiffs]." *Id.* at 281.

## ANALYSIS

Although Plaintiffs allege the Individual Defendants each had certain regulatory or oversight responsibilities that give rise to the negligence and gross negligence claims against them, Rohm and Haas maintains there are discrete and undisputed facts establishing "that there is absolutely no possibility that [Plaintiffs] will be able to establish a cause of action against the [Individual Defendants]." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). After reviewing the record, I conclude that this is just the type of case for which the summary inquiry contemplated by *Smallwood* is appropriate to determine whether the Individual Defendants have been improperly joined.

In Plaintiffs' First Amended Petition, the live pleading, the only facts alleged concerning the Individual Defendants appear in the section titled "Parties":

> 3.4     Defendant Edward Heins, Jr. is a resident of Harris County, Texas. He may be served with process at 1235 Nasa Parkway, Apt. 2002, Houston, Texas 77058.
>
> 3.5     Defendant Alan Haggadone is a resident of Harris County, Texas. Haggadone was the person responsible for risk management program implementation at the facility on the date of the incident. He may be served with process at 8655 Jones Rd, Apt 1102, Jersey Village, Texas 77065.
>
> 3.6     Defendant Ray Russell is a resident of Harris County, Texas. Russell was the ES&S leader at the facility. He may be served with process at 1425 Country Road 2224, Cleveland, Texas 77327.

Dkt. 1-2 at 13.

"Under Texas law, the elements of a negligence claim are (1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 466 (5th Cir. 2003); *see also Nabors Drilling, U.S.A., Inc. v. Escoto*, 288

S.W.3d 401, 404 (Tex. 2009). To prevail in the summary inquiry, Rohm and Haas "must put forward evidence that would negate a possibility of liability" on the part of the Individual Defendants. *Travis*, 326 F.3d at 650. To negate the possibility of liability, Rohm and Haas has submitted declarations from each of the Individual Defendants. These declarations, without question, affirmatively negate the possibility that Plaintiffs could recover against the Individual Defendants on negligence or gross negligence theories.

The Heins declaration establishes that, at the time of the July 21, 2021 chemical exposure giving rise to this lawsuit, Heins lived in Midland, Michigan and worked for the Dow Chemical Company ("Dow")[2] as its Global Director of Operations Excellence and Support Services. *See* Dkt. 11-1 at 4. In that role, Heins "had no supervisory, operational, or any other responsibilities for the Bayport, Texas plant of Rohm and Haas Chemicals LLC, where the incident occurred." *Id.* Moreover, Heins declares that he "was in no way involved in the incident, nor did [he] have any job responsibilities related to the incident during [his] time as the Global Director of Operations Excellence and Support Services for Dow." *Id.*

The Russell declaration confirms that, at the time of the July 2021 incident, Russell worked for Dow as a Security Specialist. *See id.* at 6. He had held that job since 2013 and, during that entire time, had officed out of Dow's facility in Deer Park, Texas. *See id.* As a Security Specialist, Russell "was not responsible for the emergency response at the Bayport site on the July 21, 2021 date of the incident." *Id.* at 7. In fact, he "ha[d] not been responsible for emergency response at the Bayport site" since approximately eight years *before* the incident. *Id.* Russell was not, as Plaintiffs assert in the First Amended Petition, the Emergency Services & Security leader at the Bayport facility at the time of the chemical release. *See id.* In fact, he had not held that position for at least eight years.

---

[2] Dow indirectly owns 100 percent of Rohm and Haas. *See* Dkt. 11 at 6 n.2.

The Haggadone declaration shows that Haggadone is "unfamiliar with" the January 2021 chemical release at the Bayport facility, "was in no way involved in the incident, [and had no] job responsibilities related to the incident." *Id.* at 9, 10. Although Plaintiffs claim Haggadone "was the person responsible for risk management program implementation at the facility on the date of the incident," Dkt. 1-2 at 13, Haggadone declares that he has "not worked in any capacity for the Bayport site of Rohm and Haas Checmicals LLC since July 2017." Dkt. 11-1 at 9. Haggadone is currently employed by Dow, and the job he has "held since July 2017 exclusively involves Dow's Freeport site." *Id.*

These declarations are compelling. They appear to establish that Plaintiffs have no possibility of recovery under Texas law on their negligence claims against any of the Individual Defendants. So how do Plaintiffs counter this powerful evidence? Plaintiffs have two basic arguments.

First, Plaintiffs insist there is, at a minimum, a fact issue as to whether Russell and Haggadone held positions of responsibility at the Rohm and Haas Bayport facility.[3] In support of this argument, Plaintiffs attach to their Motion to Remand various documents, including information from a public, open-source database about chemical plants (Exhibit 4), a Houston Chronicle article (Exhibit 5), Haggadone's LinkedIn profile (Exhibit 6), an Environmental Protection Agency Fact Sheet (Exhibit 7), and the LinkedIn profile of a Dow employee who did not even work at the Bayport facility (Exhibit 8). In conducting a summary inquiry to determine whether a defendant has been improperly joined, I may "pierce the pleadings and consider summary judgment-type evidence." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 766 (5th Cir. 2016). Evidence proffered in the summary judgment context need not be in admissible form, but its content must be admissible. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rohm and Haas object to Plaintiffs' exhibits for a litany of reasons, including that the documents

---

[3] Plaintiffs make no specific factual allegations against Heins in the First Amended Petition or their Motion to Remand.

contain hearsay and hearsay within hearsay, and are irrelevant. To my amazement, Plaintiffs do not even bother to respond to these evidentiary objections. Therefore, I sustain Rohm and Haas's evidentiary objections and will not consider Exhibits 4–8 in the summary inquiry. Without these exhibits, there is no evidence to support a cognizable negligence claim against the Individual Defendants.[4]

Plaintiffs' second argument is one they did not bother raising until their reply brief. Plaintiffs contend the improper joinder doctrine should not apply when a non-diverse forum defendant has been improperly joined. The insurmountable problem with Plaintiffs' argument is that it flies in the face of binding Fifth Circuit precedent. As noted in *Smallwood*, the statutory framework "entitle[s] a defendant to remove to a federal forum unless an *in-state* defendant has been '*properly* joined[,]'" and "the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined." *Smallwood*, 385 F.3d at 573 (emphasis added). The Fifth Circuit has repeatedly applied the improper joinder doctrine to situations like the one here: forum plaintiffs (Plaintiffs) sue forum defendants (the Individual Defendants) and a non-forum defendant (Rohm and Haas), and the non-forum defendant removes, arguing the forum defendant was improperly joined. *See, e.g., Allen*, 907 F.3d at 183–84 (applying improper joinder doctrine and affirming dismissal of three Texas defendants who were improperly joined by a Texas plaintiff in a suit against a non-Texas defendant); *Flagg*, 819 F.3d at 136–37 (applying improper joinder doctrine when a Louisiana citizen sued three Louisiana defendants and two non-Louisiana defendants); *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp, Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (applying improper joinder doctrine when a Texas citizen sued a Texas defendant and a Bermuda defendant); *Smallwood*, 385 F.3d at 572–73 (applying improper joinder doctrine when a Mississippi citizen sued a Mississippi defendant and an Illinois defendant).

---

[4] This is not to suggest the excluded exhibits would otherwise support a negligence claim against the Individual Defendants. As Rohm and Haas notes, these exhibits are irrelevant.

In suggesting the improper joinder doctrine does not apply when a non-diverse forum defendant has been joined, Plaintiffs rely heavily on a concurrence from Judge James Ho in *Williams v. Homeland Insurance Co. of New York*, 18 F.4th 806, 818–22 (5th Cir. 2021) (Ho, J. concurring). But that concurrence merely offers Judge Ho's expansive view on what the law of improper joinder *should* be. After indulging in that exercise, he expressly acknowledged that "[a]s a panel, we are of course bound to follow our circuit precedent." *Id.* at 821. Stated simply, it is not my role in the federal judiciary to plow new ground when the Fifth Circuit has spoken directly on an issue. Accordingly, I reject Plaintiffs' contention that the improper joinder doctrine does not extend to the present situation involving non-diverse forum defendants.

## CONCLUSION

For the reasons discussed above, I find the Individual Defendants have been improperly joined in an effort by Plaintiffs to defeat diversity jurisdiction. Accordingly, I recommend the Individual Defendants be dismissed without prejudice and the Motion to Remand (Dkt. 10) be **DENIED**.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 9th day of May 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE